**SCOTT E. BELL**                                                        **PLAINTIFF**

vs.                                                **CAUSE NO. 2:18-CV-102-KS-MTP**

**CITY OF COLUMBIA; COLUMBIA**
**POLICE DEPARTMENT; CHIEF MIKE**
**COOPER; OFFICER ADAM KELLY AND**
**UNKNOWN DEFENDANTS ABC and XYZ**                    **DEFENDANTS**

## RESPONSE TO DEFENDANTS, CHIEF MIKE COOPER
## AND OFFICER ADAM KELLY'S, MOTION FOR JUDGMENT ON THE PLEADINGS
## BASED ON QUALIFIED IMMUNITY

Comes now the Plaintiff, Scott E. Bell, by and through his attorney, and hereby files this his

*Response to Defendants, Chief Mike Cooper and Officer Adam Kelly's, Motion for Judgment on the*

*Pleadings Based on Qualified Immunity* and would show unto the Honorable Court the following,

to-wit:

1.      Paragraph 1 of the Defendants' Motion is admitted.

2.      Paragraph 2 of the Defendants' Motion is admitted.

3.      The Plaintiff has specifically pled with a detailed factual basis the support for his

claims against Officer Kelly for the use of excessive force, unlawful detainment, and unlawful arrest

as unprovoked intentional, wilful, reckless, and grossly negligent acts. The plaintiff would

furthermore add the issuance of false affidavits/citations both in an attempt to justify the Officer's

intentional, wilful, reckless, and grossly negligent acts and in retaliation against the Plaintiff as the

Plaintiff was not engaged and did not engage in any criminal activity. The claims against both

Officer Kelly and Chief Cooper are based in both federal and state claims which cannot be further

supported beyond the detailed statement of the *Complaint* without discovery of information not

readily available or accessible by the Plaintiff, but are clearly adequately supported on the face of the pleadings to date. Examples of the sought information would include, but are not limited to prior narrative reports drafted by the Officer for comparison, the personnel file(s) of Officer Kelly maintained during his employment with the Columbia Police Department, and known like allegations against Officer Kelly prior to the hiring of Officer Kelly and after he left the Columbia Police Department.

4. Mr. Bell clearly and honestly pled in particularized detail the events leading up to the stop and up to the point he was struck in his left eye by Officer Kelly and received medical care for his injury. Mr. Bell never pled nor has ever stated that he was swerving all over the road, but at all times had complete control of his vehicle as he was carefully driving in a manner to avoid the significantly large potholes and debris to avoid damage to his truck and did so without danger to others or property.

Mr. Bell does not dispute that probable cause or reasonable suspicion existed for the initial stop by Officer Kelly and the stop in and of itself was valid to ensure he was not under the influence. The violation of Mr. Bell's civil liberties all occurred post-stop. Nonetheless, at no time did Mr. Bell drive in a manner that indicated or evidenced a wilful or wanton disregard for the safety of persons or property to constitute reckless driving under Mississippi law as the road was unmarked, there was no traffic or other persons on said road at the time, Mr. Bell could see down the road a significant distance at all times, he was not under the influence of any substance, and he offered a valid explanation for his driving. *Mississippi Code Annotated* § 63-3-1201(Rev. 1996); *Gause v. State*, 203 Miss. 377 (1948). Furthermore, Officer Kelly was well aware of the road conditions in plain view and the degree of road disrepair. There were no conditions present that would have caused Mr.

Page 2 of 6

Bell to know or that he should have known that his driving was creating an unreasonable risk of injury or damage to persons or property. *Nix v. State*, 763 So.2d 896 (MS.Ct.App. 2000) and *Barnes v. State*, 249 Miss. 482, 485 (Miss. 1964). Even if Mr. Bell was speeding, which he was not, that alone is not sufficient cause for the charge of reckless driving. Op.Atty.Gen. No. 93-0267.

Mr. Bell attempted to explain his driving to Officer Kelly in answering Officer Kelly's inquiry, but it was not the answer Officer Kelly wanted to hear as he clearly and unequivocally initially presumed Mr. Bell was under the influence of some unknown intoxicating substance before ever speaking to him. Despite Officer Kelly's conduct subsequent to Mr. Bell's explanation, he clearly accepted Mr. Bell's explanation as fact as evidenced by the fact that when asked at Marion General Hospital if law enforcement wanted Mr. Bell's blood tested for intoxicating substance, law enforcement's answer was no and Mr. Bell was not cited for driving under the influence. There has arisen in the Columbia Police Department the appearance of a presumption that anyone driving at a late hour is under the influence, in possession of a controlled substance, or generally up to no good and their actions in stopping motorist and how they have aggressively treated them have reflected that predisposition.

And yes, Mr. Bell, a retired veteran and former law enforcement officer, did not appreciate Officer Kelly addressing him profanely and harshly without cause as if he were a hardened criminal up to no good, but Mr. Bell was never disrespectful, argumentative, or failed to comply with the Officer's instructions. Simply informing the officer that the high beams and search light were hurting his eyes and inquiring if they were necessary neither constitutes non-compliance, resisting arrest nor disorderly conduct nor does it justify an unprovoked blow to the face by the Officer.

Mr. Bell pled he was blind-sighted by the blow, as it was unexpected, after he unbuckled his

lap belt and was promptly exiting the vehicle as ordered and cannot specifically identify what the Officer struck him with resulting in momentary unconsciousness until he came to on the asphalt. Mr. Bell, as pled, never refused to comply, hesitated to comply, nor, under the circumstances, did he resist or was even given the opportunity to resist being unlawfully arrested had he intended to do so. The Officer in his report offered no explanation for the particular nature of the injury to Mr. Bell's left eye socket other then admitting at the end of his report that he had struck Mr. Bell in the face. Exhibit "A". Mr. Bell declines to speculate as to what was going on inside the Officer's head prompting the Officer to strike him in such an unprovoked manner without cause and there has never been any legal standard requiring such speculation to further a cause of action. The facts and nature of the injury clearly indicate an injury that was the result of the application of excessive force that was not objectively reasonable.

5. Mr. Bell in no way has made any conclusory or bald allegations against Officer Kelly. To the contrary, he has recited all the facts within his personal knowledge that could be reasonably expected of him with sufficient particularity under oath. Those facts, as pled, unequivocally evidence issues that overcome the protections afforded under qualified immunity for objectively reasonable actions or mere negligence and should be rightfully considered and determined by a trier of fact on the issues of clear reckless disregard, if not intentional disregard, of Mr. Bell's well being, safety, and constitutional rights by Officer Kelly as a law enforcement officer in the course and scope of his employment with the City of Columbia Police Department. As there were only two (2) individuals at the scene of the stop when the pled conduct occurred, it is, furthermore, an issue for a trier of fact as to the credibility between Mr. Bell and Officer Kelly. Should a trier of fact find Mr. Bell to be more credible as to the post-stop chain of events, it then would be indisputable that Officer

Kelly acted in an objectively unreasonable and excessive manner causing personal injury to and violating Mr. Bell's civil liberties as pled. On the other hand, should a trier of fact find Officer Kelly more credible and having acted in an objectively reasonable manner or in a manner constituting less then reckless disregard, he will in the end enjoy the protections of immunity from liability he now requests this Court to impose in an effort to deny Mr. Bell justice and his day in Court.

6.      Applying the law as cited by the Defendants and the Plaintiff herein in examining the environmental conditions and chain of events beginning that night on-scene from the point after the initial stop through the release of Mr. Bell at the hospital, considering the particularized interaction between Mr. Bell and Officer Kelly, it is clear the actions of Officer Kelly were unequivocally objectively unreasonable, excessive, and beyond what could reasonably be determined to be a good faith performance of his duties and outside the color of law.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that the Court find that the Plaintiff has met his burden in heightened pleading on the face of his pleadings to overcome the requested protection of qualified immunity; that the Defendants' *Motion* be denied; that the stay be lifted; that this matter be permitted to proceed pursuant to the standard track as intended by the *Federal Rules of Civil Procedure* in all manner and respects; and for such other and further relief, special and general, at law and in equity to which Plaintiff may show himself justly entitled.

Respectfully submitted, this the  14  day of August, 2018.

SCOTT E. BELL

By: _____
        Joseph L. Turney

Page 5 of 6

JOSEPH L. TURNEY
MS STATE BAR NO. 100903
JOSEPH L. TURNEY, PLLC
716 Main Street
Columbia, Ms 39429
(601)731-2098
(601)731-2099 fax
josephlturneyatt@bellsouth.net

## CERTIFICATE OF SERVICE

I, Joseph L. Turney, attorney for the Plaintiff, do hereby certify that I have this date

electronically filed via CM/ECF system and delivered a true and correct copy via electronic filing

and delivery of the *Response to Defendants, Chief Mike Cooper and Officer Adam Kelly's, Motion*

*for Judgment on the Pleadings Based on Qualified Immunity* to:

Lawrence E. Hahn
McNeese & Hahn, PLLC
P.O. Drawer 948
338 Church Street
Columbia, MS 39429
(601)731-5030
lhahn@mcneesehahn.com

So certified this the _14_ day of August, 2018.

_____
Joseph L. Turney



# Columbia Police Department

Incident Report
205 2nd Street Columbia, MS 39429
Phone: (601) 736 - 8225

| ORI | County | Venue | Report # |
|---|---|---|---|
| MS0460100 | MARION COUNTY | COLUMBIA | 1710000060 |

| Report Date / Time | Occurrence Date / Time | File Class |
|---|---|---|
| 10/25/2017 00:16 Hrs (US/Central) | 10/24/2017 22:54 Hrs (US/Central) | 97-35-7 |

## NOT FOR PUBLIC RELEASE

**Nature of Incident:** Disorderly Conduct, Resisting Arrest, Suspicious Person, Suspicious Vehicle, Traffic Arrest

**Supplements:** Approved Report (2)

**Summary:** failure to comply and resisting arrest on traffic stop.

## Incident Location

**Address:** Park @ Willow
**City:**
**ZIP:**
**Township of Occurrence:**

**County:**
**Country:** United States of America

**State:** Mississippi

**Comments:** Tracffic stop.

## Incident Offenses

| Supp # | Offense | Status | Status Date |
|---|---|---|---|
| 0 | 97-35-7 - Disorderly Conduct: Failure To Comply W / Command Of Law Enforcement . M | Open/Pending | 10/24/2017 22:54 Hrs |

**Attempted / Completed:** Completed

## Officers Involved

| Role | Name | Agency | Supp # |
|---|---|---|---|
| Assisting | Lieutenant M. Ardis (#PD08) | Columbia Police Department | 0 |
| Assisting | Sergeant D. Bass (#PD25) | Columbia Police Department | 0 |
| Assisting | Sergeant P. Foster (#PD17) | Columbia Police Department | 0 |
| Reporting | Patrolman A. Kelly (#PD27) | Columbia Police Department | 0 |

## Incident People

**Suspect / Offender**

**Supp #** 0

**Name:** BELL, EDWARD SCOTT (Primary Name)  **Title:**  **Date of Birth:** 09/03/1966

**Race:** White  **Sex:** M  **Age at Occurrence:** 51 Years Old

**DL #:** 801120441 (Mississippi)

**Address:** 1202 PINE Court COLUMBIA, MS 39429 (Date of Info: 10/25/2017)

**Phone:** 757-630-1906 - Cellular (Date of Info: 10/25/2017)
601-736-4605 - Residence (Date of Info: 10/25/2017)

**Physical Description: Hgt:** 508  **Wgt:** 220  **Date of Info:** 10/25/2017

**Hair:** Gray Or Partially Gray Shaved.  **Length:** Short

**Skin:** Light  **Build:** Large

**Eyes:** Brown  **Facial Hair:** Mustache

" A "

NOT FOR PUBLIC RELEASE

## Incident Organizations

**Victim**                           City Of Columbia Police Department

**Address:**  201 2nd Street

Columbia Mississippi 39429

Phone:  (601) 736-8225 - Business (Date of Info: 10/20/2015)

**Victim**               Society

## Incident Vehicles

**Other**                                                                Supp #: 0

**Year/Make/Model:**   1970/CHEVROLET (CHEV)/

**Type:**
**Style:**
**Color:**        Green                                **Odometer:**
**VIN:**          CE140B121689                         **Motorcycle CCS:**
**License #/State:**  T27196/Mississippi               **License Month/Year:** /
**License Type:**  Antique
**Misc Id:**
**Insurance Company:**                                 **Policy Number:**

**Owner:**
**Value:**
**Status:**       Unknown(#0)                   **Locked:** N    **Keys In Vehicle:** N

**Comments:**     **Invalid vehicle model from import, Model: C10 Make: CHEV

| Vehicle Role | Total Value | Grand Total of Vehicle Loss: |
|---|---|---|
| Other | $ 0.00 | |

## Incident Narratives

Title: Original Narrative

Author: Adam Kelly                          Date / Time:  10/25/2017 01:00 Hrs     Supp #:  0

On October 24, 2017 at approximately 2300 hours I, Officer Kelly was patrolling down Lafayette St. As I was driving toward the stop sign on Park Ave. I noticed an older model pickup truck come flying at a high rate of speed down N Park Ave heading North. When I pulled out I took a left off of Lafayette street to try and catch up with the truck heading north on N Park Ave. While I was driving behind the vehicle I realized the vehicle was swerving very aggressively in and out of lanes. At that point I was not sure if the driver could be driving under the influence of some substance. I decided to make my traffic stop due to the fact the driver was driving erratically and could be intoxicated. I didn't want another car to be coming in the opposite direction and hit this truck causing an accident. I illuminated my emergency lights and siren and the traffic stop was made at North Park Ave. And about 100 yards from Willow Drive. As always before getting out of my car I have always due to my training illuminated my take down light and spot light for

officer safety. I always for safety and to have a tactical advantage due to all the officer involved shootings nowadays I placed my spot light in the rear view mirror while approaching a vehicle. I exited my patrol vehicle and began to slowly walk to the driver side of the vehicle. Just before I got to the window of the vehicle I said, " How are you doing sir?" and before I could introduce myself I was interrupted by the driver screaming at me " I'D BE A LOT BETTER IF YOU'D GET THESE LIGHTS OUT OF MY EYES". I immediately started over trying to introduce myself and give my reason as to why I've stopped the driver and I was interrupted again by the driver later identified as Edward Scott Bell, Screaming " WHY THE HELL ARE YOU PULLING ME OVER" . I reiterated a third time to Bell, I'm Officer Kelly of the Columbia police department , the reason I stopped you was because you were swerving in and out of the right lane so far you were driving over in the entire left side lane then pulling back over in the right side of the lane. Bell responded once again screaming at me. "I'M TRYING TO AVOID THE FUCKING POT HOLES OUT HERE ON THE ROAD, IF THE CITY WOULD DO THERE GOD DAMN JOB AND FIX THE ROADS AROUND HERE I WOULDN'T HAVE TO BE SWERVING IN AND OUT OF LANES NOW WOULD I. DAMN CITY WORKERS!!!!!!" At that time I pleaded to Mr.. Bell to calm down. In which I asked for his drivers license in which he began yelling again " IM not giving you my damn license , YOU GOT NO REASON TO PULL ME THE HELL OVER." At this time I gave a verbal commands again for Mr.. Bell to give me his license. He refused. At this point I started to become fearful that Mr.. Bell may have a weapon or something in his vehicle or tool he may use if he gets upset enough he could harm me with. Due to Mr.. Bell 's failure to comply with my instructions, I asked Mr.. Bell to step out of the car and I opened his driver door. Mr.Bell then grabbed the driver door and in his continuing yelling manner stated to me " NO THE HELL IM NOT GETTING OUT OF THE CAR" and pulled the driver door out of my hand and shut the door back. At this point I gave Mr. Bell a second verbal command to step out of the vehicle and I reopened the driver side door. At this point very very aggressively and fast Bell turned in the driver seat and at the side time he was trying to unbuckle his seat belt , he stated to me " OK I'M A NAVY SEAL AND A RETIRED WAR VET I'LL STEP OUT OF THE CAR I CAN'T BELIEVE THIS. Immediately, Bell stepped out and turned with a very aggressive posture his chest bowed and his fist balled in front of me. I placed my hands in front of me opened in a defensive manner in case Bell took a swing at me I could protect myself, again informing him to calm down and turn around and place his hands behind his back. A third attempt of trying to inform Bell to put his hands behind his back he continued to yell " NO I HAVEN'T DONE ANYTHING!!!. I gave loud verbal commands a fourth time for Mr.. Bell to turn around and put his hands behind his back. After he continued to scream at me asking me what for, I drew out my taser and turned it on and pointed it at Bell's chest. At this time I advised Bell If he didn't turn around and put his hands behind his back I would have to tase him. At this time Bell did turn around and place his hands behind his back. I reholstered my taser and grabbed my handcuffs out from my belt. As soon as I started to place the handcuffs on Bell's left wrist, Bell pulled and turned around trying to face me and grabbed my left arm to keep me from placing my handcuffs on his wrist. I immediately took Bell to the ground and tried to place him under arrest for failure to comply. I yelled loud verbal commands over and over at Bell to put his hands behind his back now. As we were struggling in the middle of the roadway I was unable to reach my taser. Mr.. Bell continued to resist and fight with me as I attempted to affect the arrest. After fighting Mr.. Bell for several min trying to get control of him and place him under arrest he immediately laid flat on the ground and threw his hands out to his side, by his waist and did not move. While wrestling and fighting with Mr.. Bell I managed to find a way to reach my radio and yell for help on the radio. As I was wrestling to gain control of Bell in the middle of the street on the ground, I could not find my handcuffs I lost the first time I tried to place Bell into custody standing outside his truck by his tool box. At that point I was on top of Bell holding his head down to the concrete he continually struggled and resisted. I had to physically hold him still with my hands BC I had to wait on my backup to get there to bring me a set of handcuffs. I was able to rise up and draw my taser out and place it on Bell's back telling him not to move or he

would be tased while I waited for backup with a set of handcuffs to place Bell at this point under arrest for disorderly conduct , failure to comply and resisting arrest. Soon my back up had arrived and was able to get off Bell and place him under arrest. After Bell was in handcuffs and placed in the back set of the car I was able to finally locate my handcuffs, which had slung off the wrist of bell when he resisting the first time outside his truck by the toolbox. My handcuffs were found hanging between the toolbox and the back rear glass on the bed of the truck. Bell was taken to the hospital and transported to FGH for the injuries he sustained to the face from when I had to strike him to get him under control. Bell's was cited for Failure to Comply , Resisting Arrest and cited for reckless driving on North Park Ave.

| Signed: Patrolman A. Kelly (#PD27) | Reviewed By: | Captain J. Barnes (#PD03) |

## Incident Images

10/25/2017 - Original File Name: Img_20171024_235255.Jpg



NOT FOR PUBLIC RELEASE
10/25/2017 - Original File Name: Img_20171024_235306.Jpg



NOT FOR PUBLIC RELEASE
10/25/2017 - Original File Name: Img_20171024_235312.Jpg





Title: Supplement#1 - Narrative

Author: Davey Bass                    Date / Time:  10/26/2017 05:24 Hrs     Supp #:  1

On 10/24/2017 at about 11:00pm, Officer Bass responded to an Officer Assist from Officer Kelly on N. Park Ave near Willow Dr.  Officer Kelly had requested help on his traffic stop as a result of the suspect, Scott Bell, resisting arrest.  When Officer Bass arrived on scene he observed Mr. Bell handcuffed and sitting in the middle of the roadway.  Officer Bass assisted Officer Kelly in helping Mr. Bell to his feet and Officer Bass placed him in the back of his patrol vehicle.  Officer Bass noticed that the left side of Mr. Bell's face was swollen and asked him if he would like an ambulance to come the scene for treatment.  Mr. Bell stated that he did want an ambulance because he thought his jaw was broken.  Officer Bass informed Lt Ardis of the request for medical attention and Lt Ardis advised Officer Bass to go ahead and transport him to Marion General instead of waiting on the ambulance.  During the ride to the hospital Mr. Bell seemed very upset and stated that he couldn't believe he was being treated this way after he had spent 27 years in the military and retired.  While at the hospital Mr. Bell stated that he was a Navy Seal and that he was last stationed in Virginia.  Mr. Bell requested that Officer Bass call his parents to let them know that he was in police custody.  He stated that he usually calls them when he gets home from a visit with them and that they would be worried if he didn't call.  Officer Bass called and spoke to Stuart Bell, Scott Bell's father, and informed him of the arrest and of the whereabouts of suspect Bell's vehicle and dog.  Officer Bass was informed by hospital staff that he would be transported to Forrest General Hospital for further treatment.  Lt Ardis advised Officer Bass to cite suspect Bell for disorderly conduct: failure to comply and resisting arrest per Officer Kelly and release him.  Suspect Bell was informed of the

whereabouts of his vehicle, which had been towed by Tony's Towing Service and the whereabouts of his dog, which had been taken to the city animal shelter. Suspect Bell refused to sign the citation.

| Signed: Sergeant D. Bass (#PD17) | Reviewed By: | Captain J. Barnes (#PD03) |
| --- | --- | --- |

On the date of October 24, 2017, while on general patrol, Lt. Ardis heard officer Kelly calling for assistance. Kelly stated that he was out in the road with a subject on Park Ave. near Willow Drive.

Lt. Ardis started that way. On arrival to the scene Kelly had the subject detained on the ground. Once to Kelly he asked Lt. Ardis for his cuffs because kellys was lost in the scuffle. Lt. Ardis gave Kelly the cuffs and began to look for the subjects identification. Lt Ardis found the subject license and identified him as EDWARD  SCOTT BELL.

Lt. Ardis asked what happened and Kelly stated that BELL was being aggressive during the traffic stop. Kelly stated that he asked BELL to step out of the vehicle and he initially refused. Kelly stated that after BELL exited the  vehicle he attempted to put cuffs on him and that's when the fight began.

BELL was still being argumentative so Lt, Ardis instructed Officer Bass to put him in his car and get ready to transport.

Before transport Bass approached Lt. Ardis and stated that BELL wanted to go to the hospital because he thought his jaw was broke. Lt. Ardis told Bass to go ahead and take him to the hospital.

While on scene Lt. Ardis had little contact with BELL so did not know the extent of his injuries so after calling animal control for his dog and a tow truck for his vehicle Lt. Ardis went to the hospital to check on BELL.

On arrival to the hospital Lt. Ardis met BELL and Bass in the emergency waiting room. BELL was sitting at the receptionist desk and Lt. Ardis observed that his eye was severely bruised and swollen.

Later in the night Lt. Ardis was contacted by Bass who stated that BELL was going to be transferred to Forrest General due to the extent of his injuries. So Lt. Ardis instructed Bass to cite him out and let him be transported by AAA.

There is no further information at this time.

End of narrative.

| Signed:  Lieutenant M. Ardis (#PD08) | Reviewed By:   Captain J. Barnes (#PD03) |
|---|---|

NOT FOR PUBLIC RELEASE

# Columbia Police Department Person Details Report

| | |
|---|---|
| Index Id: | 31206 |
| Date of Info: | 10/25/2017 |

| Person Name: Bell, Edward Scott | | Title: |
|---|---|---|
| Sex: Male  Race: White | | Ethnicity: Unknown |
| DOB: 09/03/1966 | Age: 51 | SSN: 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 |
| DL #: 801120441 | | DL State: MS |

## Physical Descriptions

| Ht | Wt | Eye Color | Hair Color | Hair Style | Facial Hair | Hair Length | Build | Skin Color | Age | Date of Info |
|---|---|---|---|---|---|---|---|---|---|---|
| 508 | 220 | Brown | Gray or Partially Gray | Shaved | Mustache | Short | Large | Light | | 10/25/2017 |

## Addresses

| Address | Occupied | Type | Official | Date of Info |
|---|---|---|---|---|
| 1202 PINE Court COLUMBIA, MS 39429 | | Residence | N | 10/25/2017 |

## Phone Numbers

| Number | Type | Date of Info |
|---|---|---|
| 757-630-1906 | Cellular | 10/25/2017 |
| 601-736-4605 | Residence | 10/25/2017 |

## Identification

| ID Number | ID Type | Class | State | Country | Issued | Expires | Date of Info |
|---|---|---|---|---|---|---|---|
| 801120441 | OLN | | Mississippi | | | | 10/25/2017 |

## Vehicles

| Year: 1970 | Make: CHEVROLET(CHEV) | Model: COLORADO | | Type: Truck/SUV |
|---|---|---|---|---|
| VIN: CE14OB121689 | License Number: T27196 | State: MS | Role: Driver | Date of Info: 10/25/2017 |

## Summary Information

| Incidents By Involvement Role | | Incidents By Status | | Offenses By Category | |
|---|---|---|---|---|---|
| Arrestee | 0 | Approved Report | 1 | Society | 1 |
| Offender | 1 | | | Drug | 0 |
| Victim | 0 | | | Person | 0 |
| Other | 0 | | | Property | 0 |
| | | | | Vehicle | 0 |

## Involved Incidents

**Report #:** 1710000060    **Agency:** Columbia Police Department    **Status:** Approved Report    **Report Date:** 10/25/2017

**Offense(s):** Disorderly Conduct: Failure To Comply W / Command Of Law Enforcement : M :    **Role(s):** Suspect / Offender

**Summary:** failure to comply and resisting arrest on traffic stop.

## Person Common Event Associations

| Person Info | | Count | |
|---|---|---|---|
| Bell, Edward Scott - DOB: 09/03/1966 RACE: White SEX: Male | 1 | Incidents | 10/25/2017 |

## Vehicle Common Event Associations

| Vehicle Info | | Count |
|---|---|---|
| T27196 Mississippi CE140B121689 1970 CHEVROLET(CHEV) Green | 1 | Incidents |

## Address Common Event Associations

| Address Info | | Count |
|---|---|---|
| Park @ Willow , MS | 1 | Incidents |

# Marion County 911 Call Report

| | | | | | | |
|---|---|---|---|---|---|---|
| **Call #:** | 201724229 | **Dispatcher:** | VJOHNSTON | **Call Time:** | 10/24/2017 22:54 Hrs | |
| **Received:** | OFFICER INITIATED | **Event Type:** | TRAFFIC STOP | **Priority:** | Low | |
| **Caller Name:** | | **Phone #:** | | **Close Time:** | 10/25/2017 00:28 Hrs | |
| | | | | **Disposition:** | | |

## Location

**Incident Location:** PARK @ WILLOW
**Common Place:**
**Caller Location:** PARK @ WILLOW
**Latitude:**
**Longitude:**

## Incident Notes

**Notes:** REMARKS/NARRATIVES.


: User: VJOHNSTON
2017-10-24 22:54:28
VJOHNSTON 47160.
HDI 5376 22:51:44 10/24/17
RR.MSHDI0000.MS0460101.
VIN/CE140B121689
RR.MSLIC0000.MS0460101.*MRI5517792.
**** RECORDS MAINTAINED BY MS TAX COMMISSION ****
LIC/T27196 LIT/AQ EXP/12-2099 ISSUED/07062015 TAG STATUS/1
VIN/CE140B121689 1970 CHEV C10 2D GREEN
PUR-DTE/07062015 TLE-DTE/08182015 TLE/H342445 TYPE/O
REG/BELL SCOTT EDWARD TLE/BELL SCOTT EDWARD
1202 PINE COURT 1202 PINE COURT
COLUMBIA MS 39429 COLUMBIA MS 39429
CO/MARION CO/MARION #LEINS/0
LEIN/1 DTE/ LEIN/2 DTE/
DECAL#/
Insurance Status/CONFIRMED Insurer/United Serv Automobile Assn
Policy/0186031907105

: User: VJOHNSTON
2017-10-24 23:01:42
VJOHNSTON 47160.
DMVWS 12899 22:58:14 10/24/17
DR.MSOLN0000.MS0460101.
OLN/801120441
OLN/801120441 CLASS/Regular Operator
BELL SCOTT EDWARD
1202 PINECOURT COLUMBIA MS 394290000
RAC/W SEX/M EYE/Blue HAI/Blonde HGT/508 WGT/165
SOC/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 DCB/19660903 ISSU/20150717 EXP/20190903
RESTRICTIONS/NONE ENDORSEMENTS/NONE ELIG DATE/00000000
STATUS NON-CDL:Licensed STATUS CDL:UNLICENSED
** END OF DRIVERS HISTORY **
MRI 5518288 47160 0219 22:58:14 10/24/17

: User: VJOHNSTON
2017-10-24 23:04:43
VJOHNSTON PD08 REQ ANIMAL CONTROL TO RETRIEVE A CANINE

## Officers

| Primary | Radio # | Name | Dispatch | On Scene | Clear |
|---------|---------|------|----------|----------|-------|
| Y | PD27 | Kelly, Adam | 10/24/2017 22:54 Hrs | 10/24/2017 22:54 Hrs | 10/25/2017 00:28 Hrs |
| N | PD17 | Foster, Peggy | 10/24/2017 23:00 Hrs | 10/24/2017 23:00 Hrs | 10/24/2017 23:03 Hrs |
| N | PD08 | Ardis, Marcus | 10/24/2017 22:56 Hrs | 10/24/2017 22:58 Hrs | 10/24/2017 23:13 Hrs |
| N | PD25 | Bass, Davey | 10/24/2017 22:56 Hrs | 10/24/2017 22:58 Hrs | 10/25/2017 00:28 Hrs |

## Incidents

| Report # | Supp # | Agency | Reporting Officer(s) |
|----------|--------|--------|----------------------|
| 1710000060 | 0 | Columbia Police Department | Kelly, Adam |